# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JASON J. TIGER, SR., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN COLVIN, )<br>Acting Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-13-258-SPS |

## OPINION AND ORDER

The claimant Jason J. Tiger, Sr., requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the decision of the Commissioner is hereby REVERSED and the case is REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born July 20, 1970, and was forty-one years old at the time of the administrative hearing (Tr. 26). He completed the ninth grade, and has worked as an auto body repairer (Tr. 147, 479). The claimant alleges he has been unable to work since September 1, 2006, due to a back injury, diabetes, chronic chest pain/discomfort, hypertension, and feet/leg discomfort (Tr. 141).

## Procedural History

On August 24, 2010, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Trace Baldwin conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated December 12, 2011 (Tr. 11-22). The Appeals Council denied review, so the ALJ's opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform the full range of light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), *i. e.*, he could lift/carry twenty pounds occasionally and ten pounds frequently, and sit/stand/walk six hours in an

eight-hour workday. The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled under Medical Vocational Rule 202.21, a.k.a. "the Grids" (Tr. 22).

**Review**

The claimant contends that the ALJ erred: (i) by failing to consider his nonsevere impairments of obesity, hypertension, mild congestive heart failure, high cholesterol, chronic obstructive pulmonary disease (COPD), sleep apnea, mild lumbar degenerative disc disease, and gastritis at steps four and five of the sequential analysis; (ii) by failing to adopt limitations related to his COPD as recommended by a state reviewing physician; (iii) by failing to properly account for his obesity; and (iv) by failing to properly assess his credibility. The Court agrees that the ALJ failed to properly assess the claimant's impairments at step four, and the decision of the Commissioner is therefore reversed.

The ALJ determined that the claimant had the severe impairment of diabetes mellitus, along with the nonsevere impairments of obesity, hypertension, mild congestive heart failure, high cholesterol, COPD, sleep apnea, mild lumbar degenerative disc disease, and gastritis (Tr. 13). His weight ranged from 284 to 312, and he frequently weighed over 300 pounds; he testified at the administrative hearing that he weighed about 300 pounds, but that his weight goes up and down (Tr. 27, 220, 431). The relevant medical evidence reveals that the claimant largely received treatment at WeWoka Indian Health Center for his impairments. In 2005, prior to his alleged onset date, he presented to the Emergency Department at the Creek Nation Health Center with complaints of acute onset low back pain after he lifted a stove (Tr. 301). He was prescribed heat and

over-the-counter ibuprofen to treat it (Tr. 301). As to his diabetes, the medical evidence from 2007 through 2010 shows that it was at times controlled by medication and at times poorly controlled due to the claimant's lack of compliance with medication and diet, and notes reflect chronic edema (Tr. 306-429, 576-611, 613-651). Testing related to the claimant's shortness of breath and chest pain revealed they were related to his COPD, rather than any heart problems (Tr. 599-602). A March 9, 2009 chest x-ray revealed the heart was mildly enlarged and had mild pulmonary vascular congestion (Tr. 235). He was assessed as having mild congestive heart failure (Tr. 235).

On November 19, 2010, Dr. Adel Malati completed a comprehensive internal medicine exam, finding, *inter alia*, that he was positive for back pain, diabetes mellitus, hypertension, and hyperlipidemia (Tr. 430). He weighed 312 pounds, had a steady gait, and could sit, stand, and lie down without difficulty (Tr. 433). He had a full range of motion in the back, but complained of pain on flexion, and had full range of motion in hips and left knee. His right knee was limited to flexion of 90 degrees (Tr. 433).

In November, the claimant reported to WeWoka Indian Health Clinic with low back pain following lifting that was accompanied by right knee swelling that had lasted about a week (Tr. 553). The claimant was hospitalized December 14-19, 2010, for an acute exacerbation of his COPD (Tr. 448). He was admitted with shortness of breath and leg pain, and heart failure and deep vein thrombosis were ruled out (Tr. 451, 645-646, 649-650). It was noted at the time that his blood sugars were elevated due to a steroid taper and poor glucose control (Tr. 448-449). On December 16, 2010, a state reviewing

physician determined that the claimant could perform the full range of medium work (Tr. 440-441).

The claimant returned to WeWoka Indian Health Clinic on December 28, 2010, continuing to complain of the left leg pain (Tr. 545). A scan of the left hip was negative, but the report stated it was very limited secondary to the claimant's body habitus as well as the technique and it could have easily obscured a fracture (Tr. 563). A lumbosacral spine view revealed mild degenerative disc disease at L5-S1, along with minimal spondylosis (Tr. 565). A November 2010 scan of the right knee revealed mild suprapatellar effusion and soft tissue swelling (Tr. 566).

On March 4, 2011, a state reviewing physician found the claimant could perform light work, but needed to avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. (Tr. 656-659).

On July 4, 2011, the claimant went to Holdenville General Hospital's ER with complaints of shortness of breath, and was assessed with pulmonary edema and obstructive sleep apnea (Tr. 675). A frontal view of the chest was performed, and the impression was that, when correlated with his previous study, there was a mild prominence of the pulmonary interstitial markings, and the possibility of mild edema could not be excluded (Tr. 672). A sleep test revealed the presence of severe sleep apnea, advised the claimant again sleeping supine, and recommended the continued use of a CPAP machine (Tr. 683).

Social Security Ruling 02-1p states that the effects of obesity must be considered throughout the sequential evaluation process. *See* Soc. Sec. Rul. 02-1p, 2000 WL 628049

at *1 (Sept. 12, 2002). The Listing of Impairments with regard to the Musculoskeletal System references obesity and explains that "[t]he combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately." The ALJ "must consider any additional and cumulative effects of obesity" when assessing an individual's RFC. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, 1.00 Musculoskeletal System, Q. However, "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Soc. Sec. Rul. 02-1p, 2000 WL 628049, at *6. Therefore, "[a]ssumptions about the severity or functional effects of obesity combined with other impairments [will not be made]," and "[w]e will evaluate each case based on the information in the case record." *Id.*

The ALJ recited the foregoing authorities as to obesity at step two and stated that terms such as "morbid obesity" did not establish a severe impairment for disability purposes. He then found that the claimant had "been essentially within normal limits on repeat physical examination" (Tr. 14). Although the ALJ was not required to find the claimant's obesity was a severe impairment based on his weight, the effects of obesity must be considered throughout the sequential evaluation process. *See* Soc. Sec. Rul. 02-1p, 2000 WL 628049 at *1 (Sept. 12, 2002). Even so, the ALJ failed to connect the claimant's obesity in his step four findings as to the claimant's RFC, or to determine whether the medical evidence demonstrated any *additional or cumulative* effects from his obesity. *See, e. g., Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 741-42 (10th Cir. 2007) (noting that "obesity is [a] medically determinable impairment that [the] ALJ must

consider in evaluating disability; that [the] combined effect of obesity with other impairments can be greater than effects of each single impairment considered individually; and that obesity must be considered when assessing RFC."), *citing* Soc. Sec. Rul. 02-1p, 2000 WL 628049, at *1, *5-*6, *7; *Baker v. Barnhart*, 84 Fed. Appx. 10, 14 (10th Cir. 2003) (noting that the agency's ruling in Soc. Sec. Rul. 02-01p on obesity applies at all steps of the evaluation sequence). This was important to do because the claimant argued at the administrative hearing and on appeal that his combination of impairments makes him unable to work. Given the impact that obesity and poorly controlled diabetes can have on the cardiovascular and respiratory systems, coupled with the claimant's documented repeat problems related to shortness of breath and obstructive sleep apnea, the ALJ erred in his failure to address the claimant's obesity at step four. *See* Soc. Sec. Rul. 02-1p, 2002 WL 346862881, at *5. *See also DeWitt v. Astrue*, 381 Fed. Appx. 782, 785 (10th Cir. 2010) ("The Commissioner argues that the ALJ adequately considered the functional impacts of DeWitt's obesity, given that the ALJ's decision recognizes she is obese and ultimately limits her to sedentary work with certain restrictions. But there is nothing in the decision indicating how or whether her obesity influenced the ALJ in setting those restrictions. Rather it appears that the ALJ's RFC assessment was based on 'assumptions about the severity or functional effects of [DeWitt's] obesity combined with [her] other impairments' – a process forbidden by SSR 02-1p." ), *citing* Soc. Sec. R. 02-1p, 2000 WL 628049, at *6.

Indeed, the ALJ should have considered the combined effect of *all* the claimant's impairments (including his numerous nonsevere impairments) in assessing his RFC. *See*

*Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original]; *McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]"). *See, e. g., Grotendorst v. Astrue*, 370 Fed. Appx. 879, 884 (10th Cir. 2010) ("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Grotendorst's mental impairments were not severe, she gave those impairments no further consideration. This was reversible error."). For example, the ALJ refused to impose any limitations related to the claimant's diagnosed COPD (as suggested by the state reviewing physician) because he had determined it was a nonsevere impairment. He should *at least* have discussed the impact of the claimant's nonsevere impairments, *including* obesity and COPD, on the claimant's severe impairment of diabetes mellitus. This is particularly important when there is repeated evidence that the claimant's documented struggles with shortness of breath could be affected by multiple impairments, including the claimant's obesity, mild congestive heart failure, COPD, and sleep apnea.

Because the ALJ failed to properly evaluate *all* the claimant's impairments singly and in combination, the decision of the Commissioner is therefore reversed and the case

remanded to the ALJ for further analysis of the claimant's impairments. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 26th day of March, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**